[Civ. No. 10293.   Third Dist.   Mar. 19, 1962.]

C. ROBERT BUPP, Plaintiff and Appellant, v. GREAT WESTERN BROADCASTING CORPORATION, Defendant and Respondent.

Neyhart & Grodin and Duane B. Beeson for Plaintiff and Appellant.

Downey, Brand, Seymour & Rohwer and John F. Downey for Defendant and Respondent.

SCHOTTKY, J.—C. Robert Bupp, whose professional name is Bob Stone, commenced an action against the Great Western Broadcasting Corporation to recover damages in the sum of $210,000, alleging that Great Western's action in televising video-tape recordings in which he appeared had irreparably damaged his professional and artistic reputation and standing. He attempted to state four causes of action. The first was based on the theory of unfair competition, the second on involuntary servitude, the third on breach of contract, and the fourth on defamation. The trial court sustained demurrers on all counts except the breach of contract

count without leave to amend. Bupp declined to amend, a judgment of dismissal was entered, and this appeal followed.

The factual situation before this court on appeal is as alleged in the complaint. Appellant Bupp was employed as a staff announcer by the Great Western Broadcasting Corporation, the owner of Television Station KXTV (Channel 10) in Sacramento. As part of his duties he made video-tape recordings of commercial advertisements and announcements which were later televised to the public. Pursuant to the terms of the contract between Great Western and the American Federation of Television and Radio Artists a fee was paid to each staff announcer for each use of a commercial announcement made by the staff announcers. Bupp is and was a member of the American Federation of Television and Radio Artists. The contract between the American Federation and Great Western expired on May 15, 1960. Bupp continued to work for Great Western until September 26, 1960, at which time the American Federation called a strike. During the period May 15th to September 26th Bupp received payment for each use of the video-tape recordings in which he appeared. After the strike commenced Great Western continued to use the video-tapes in which Bupp appeared against his consent and without payment of fees. The agreement between the American Federation and Great Western provided in part: ''The provisions of this agreement applicable to commercial announcements . . . are applicable only during the term of service of such Staff Announcers. . . . After termination of such Announcer's employment with the company, the fees for the use of such Video-Tape Recordings shall be subject to individual negotiations, but in no event less than the free-lance rates as set forth in this Supplemental Agreement.''

At no time did Bupp and Great Western negotiate as to the use of the tapes. The fact that there was a strike at the station was given wide publicity. The video-tape recordings made by Bupp which were used indicated that Bupp was still working. According to Bupp, they thereby depicted him as a strikebreaker and as an opponent of organized labor.

Appellant does not contend in this court that he was forced into involuntary servitude, so that contention has apparently been abandoned, and it is unnecessary to discuss the court's ruling sustaining the demurrer to that cause of action.

We shall first discuss the question of whether the complaint stated a cause of defamation or unfair competition, and, if not, could one have been stated.

The contract between the American Federation and Great Western provided that after termination of the announcer's employment the fees for the use of such video-tapes would be subject to individual negotiation. Impliedly, the contract contemplated the use of the tapes by Great Western subject to the payment of a fee. If use were contemplated, it could not be defamation to use the pictures. The fact that use was contemplated is borne out by the allegations in the complaint to the effect that as part of his duties he was to perform on video-tape recordings which were to be televised to the public. This is just what occurred. Under such circumstances there could be no unfair competition or defamation.

In *Lillie* v. *Warner Bros. Pictures, Inc.*, 139 Cal.App. 724 [34 P.2d 835], Beatrice Lillie entered into a contract with a motion picture producer in which she agreed to perform certain scenes. It was also agreed that the scenes were to be used in a certain revue and not for ''Shorts.'' She brought an action for invasion of her right of privacy because the scenes were shown as ''Shorts.'' The court held she had no cause of action except for breach of contract. The court said at page 728: ''. . . By the contract respondent acquired a full ownership in the picture, subject only to the limitations contained in the contract. This ownership included the right to use the picture publicly in any form of exhibition, except as such right is limited by the terms of the contract.''

In *Vargas* v. *Esquire, Inc.*, 164 F.2d 522, plaintiff Vargas drew pictures which were regularly published in Esquire and on calendars. After Vargas terminated his contract, he sought to enjoin Esquire from using the pictures. It was claimed that the manner of reproduction was such as to constitute misrepresentation and unfair competition. The court held that there could be no unlawful taking of property in view of the contract between the parties.

We are convinced that appellant Bupp was not entitled to claim injury. The tapes were used in the very manner agreed to by contract. Bupp performed as he was hired to do and was paid for his performance. Use without payment would give him a cause of action for breach of contract but not for tort. The court therefore did not err in sustaining without leave to amend respondent's demurrer to the causes of action for unfair competition, involuntary servitude and libel and defamation.

The more difficult question is whether a cause of action was stated for breach of contract, to which count the

court sustained appellant's demurrer with leave to amend. We agree with the following statement in the court's memorandum opinion: "Plaintiff in his third cause of action asserts that under the terms of the agreement referred to between the union and the defendant it was recognized between the parties that plaintiff had a property right or interest in the video-tape recordings and that the defendant is obligated to pay fees to plaintiff for each use of said recording. The Court does not agree with that allegation. Nowhere in the union contract is it recognized that plaintiff had a property right or interest in the recordings. It was, however, recognized that defendant was obligated to pay fees to plaintiff for each use of the recordings, including such use as was made thereof after the termination of his employment. To that extent and to the extent that it may be asserted that said fees have not been paid, a cause of action for breach of contract may be stated. The assertion in this third cause of action that the use of the video-tapes after the strike constitutes a misappropriation of plaintiff's property is without merit and is a mere conclusion."

The union contract provided, in part, that "After termination of such Announcer's employment with the company, the fees for the use of such Video-Tape Recordings shall be subject to individual negotiations, but in no event less than the free-lance rates as set forth in this Supplemental Agreement." Clearly, Bupp was a third party beneficiary of this part of the contract. No allegation is made that Great Western refused to negotiate a price for or refused to pay for each of the tapes.

We do not believe that the allegations of the complaint set forth a cause of action for breach of contract. It is evident that appellant has sought to recover on a tort theory but no tort has been committed and no breach of contract has been alleged.

The demurrer to the contract count was properly sustained. In this instance the court granted leave to amend. Bupp refused to amend. In such a case the appellate court is limited to a determination of whether the complaint states a cause of action, not whether it could be amended to do so. (*Levinson* v. *Bank of America,* 126 Cal.App.2d 122, 125 [271 P.2d 632]; *Taylor* v. *Vallelunga,* 171 Cal.App.2d 107 [339 P.2d 910].)

The judgment is affirmed.

Peek, P. J., and Pierce, J., concurred.