[No. F054138. Fifth Dist. Apr. 2, 2009.]

CYNTHIA MORENO et al., Plaintiffs and Appellants, v.
HANFORD SENTINEL, INC., et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication
with the exception of parts 2. and 3. of the discussion.

**COUNSEL**

Law Offices of Paul Kleven and Paul Kleven for Plaintiffs and Appellants.

Auchard & Stewart and Paul Auchard for Defendants and Respondents.

**OPINION**

**LEVY, J.**—The issue presented by this appeal is whether an author who posts an article on MySpace.com can state a cause of action for invasion of privacy and/or intentional infliction of emotional distress against a person who submits that article to a newspaper for republication. The trial court concluded not and sustained the demurrer to appellants' complaint without leave to amend.

Appellants contend the republication constituted a public disclosure of private facts that were not of legitimate public concern and thus was an invasion of privacy. Appellants note that the republication included the author's last name whereas the MySpace.com posting did not. Appellants further argue that the person who submitted the article to the newspaper did so with the intent of punishing appellants and thus they have a claim for intentional infliction of emotional distress.

 As discussed in the published portion of this opinion, the trial court properly sustained the demurrer without leave to amend to appellants' invasion of privacy cause of action. The facts contained in the article were not private. Rather, once posted on MySpace.com, this article was available to anyone with Internet access. As discussed in the nonpublished portion, the trial court should have overruled the demurrer to the intentional infliction of emotional distress cause of action. Under the circumstances here, a jury should determine whether the alleged conduct was outrageous. Accordingly, the judgment will be affirmed in part and reversed in part.

## BACKGROUND

Since the appeal is from the sustaining of a demurrer without leave to amend, the facts are derived from the complaint. This court must give the complaint a reasonable interpretation and assume the truth of all material facts properly pleaded. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) However, contentions, deductions or conclusions of law will not be accepted as true. (*Id.* at p. 967.)

Following a visit to her hometown of Coalinga, appellant, Cynthia Moreno, wrote "An ode to Coalinga" (Ode) and posted it in her online journal on MySpace.com. The Ode opens with "the older I get, the more I realize how much I despise Coalinga" and then proceeds to make a number of extremely negative comments about Coalinga and its inhabitants. Six days later, Cynthia[1] removed the Ode from her journal. At the time, Cynthia was attending the University of California at Berkeley. However, Cynthia's parents, appellants David and Maria Moreno, and Cynthia's sister, appellant Araceli Moreno, were living in Coalinga. Araceli was a student at Coalinga High School.

Respondent, Roger Campbell, was the principal of Coalinga High School and an employee of respondent, Coalinga-Huron Unified School District.[2] The day after Cynthia removed the Ode from her online journal, appellants learned that Campbell had submitted the Ode to the local newspaper, the Coalinga Record, by giving the Ode to his friend, Pamela Pond. Pond was the editor of the Coalinga Record.

The Ode was published in the letters to the editor section of the Coalinga Record. The Ode was attributed to Cynthia, using her full name. Cynthia had not stated her last name in her online journal.

---

[1] For purposes of clarity, appellants will be referred to by their first names. No disrespect is intended.

[2] Appellants' request that this court take judicial notice that Roger Campbell is the principal of Coalinga High School is granted.

The community reacted violently to the publication of the Ode. Appellants received death threats and a shot was fired at the family home, forcing the family to move out of Coalinga. Due to severe losses, David closed the 20-year-old family business.

Based on the publication of the Ode, appellants filed the underlying complaint alleging causes of action for invasion of privacy and intentional infliction of emotional distress. In addition to respondents, appellants named Lee Enterprises, Inc., Lee Enterprises Newspapers, Inc., and Hanford Sentinel, Inc., the publishers of the Coalinga Record, as defendants. However, these publisher defendants were dismissed following their motion to strike the complaint as a SLAPP suit (strategic lawsuit against public participation) pursuant to Code of Civil Procedure section 425.16. Appellants abandoned their appeal from this judgment.

## DISCUSSION

1. *Appellants did not state a cause of action for invasion of privacy.*

■ The right to privacy tort was recognized in 1890 based on the trend in tort law to extend protection to " 'the right of determining, ordinarily, to what extent [a person's] thoughts, sentiments, and emotions shall be communicated to others.' " (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 23 [26 Cal.Rptr.2d 834, 865 P.2d 633].) In other words, the tort protects "a 'right "to be let alone." ' " (*Ibid.*) In 1972, the right to privacy was added to the California Constitution by initiative. (7 Cal.4th at p. 15.)

■ To state a claim for violation of the constitutional right of privacy, a party must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) a serious invasion of the privacy interest. (*International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 338 [64 Cal.Rptr.3d 693, 165 P.3d 488].) Four distinct kinds of activities have been found to violate this privacy protection and give rise to tort liability. These activities are (1) intrusion into private matters; (2) public disclosure of private facts; (3) publicity placing a person in a false light; and (4) misappropriation of a person's name or likeness. Each of these four categories identifies a distinct interest associated with an individual's control of the process or products of his or her personal life. (*Hill v. National Collegiate Athletic Assn., supra,* 7 Cal.4th at p. 24.) However, to prevail on an invasion of privacy claim, the plaintiff must have conducted himself or herself in a manner consistent with an actual expectation of privacy. (*Id.* at p. 26.)

■ Here, the allegations involve a public disclosure of private facts. The elements of this tort are " '(1) public disclosure (2) of a private fact (3) which

would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern.' " (*Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 214 [74 Cal.Rptr.2d 843, 955 P.2d 469].) The absence of any one of these elements is a complete bar to liability. (*Id.* at pp. 214–215.)

a. *Having been published on MySpace.com, the Ode was not private.*

■ As noted above, a crucial ingredient of the applicable invasion of privacy cause of action is a public disclosure of *private facts.* A matter that is already public or that has previously become part of the public domain is not private. (*Sipple v. Chronicle Publishing Co.* (1984) 154 Cal.App.3d 1040, 1047 [201 Cal.Rptr. 665].)

Here, Cynthia publicized her opinions about Coalinga by posting the Ode on MySpace.com, a hugely popular Internet site. Cynthia's affirmative act made her article available to any person with a computer and thus opened it to the public eye. Under these circumstances, no reasonable person would have had an expectation of privacy regarding the published material.

■ As pointed out by appellants, to be a private fact, the expectation of privacy in the fact need not be absolute. (*Sanders v. American Broadcasting Companies* (1999) 20 Cal.4th 907, 915 [85 Cal.Rptr.2d 909, 978 P.2d 67].) Private is not equivalent to secret. (*M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 632 [107 Cal.Rptr.2d 504].) "[T]he claim of a right of privacy is not ' "so much one of total secrecy as it is of the right to *define* one's circle of intimacy—to choose who shall see beneath the quotidian mask." ' Information disclosed to a few people may remain private." (*Ibid.,* fns. omitted.) Nevertheless, the fact that Cynthia expected a limited audience does not change the above analysis. By posting the article on MySpace.com, Cynthia opened the article to the public at large. Her potential audience was vast.

That Cynthia removed the Ode from her online journal after six days is also of no consequence. The publication was not so obscure or transient that it was not accessed by others. (Cf. *DVD Copy Control Assn., Inc. v. Bunner* (2004) 116 Cal.App.4th 241, 251 [10 Cal.Rptr.3d 185].) The only place that Campbell could have obtained a copy of the Ode was from the Internet, either directly or indirectly.

Finally, Cynthia's last name was not a private fact. Although her online journal used only the name "Cynthia," it is clear that her identity was readily ascertainable from her MySpace page. Campbell was able to attribute the article to her from the Internet source. There is no allegation that Campbell obtained Cynthia's identification from a private source. In fact, Cynthia's

MySpace page included her picture. Thus, Cynthia's identity as the author of the Ode was public. In disclosing Cynthia's last name, Campbell was merely giving further publicity to already public information. Such disclosure does not provide a basis for the tort. (*Sipple v. Chronicle Publishing Co., supra,* 154 Cal.App.3d at p. 1048.)

> b. *The other members of Cynthia's family do not have an independent cause of action for invasion of privacy.*

Based on the direct damages they allegedly incurred due to publication of the Ode, Cynthia's parents, David and Maria, and Cynthia's sister, Araceli, argue that they have standing to sue for invasion of privacy. However, because the publication of the Ode was not an invasion of Cynthia's privacy, these appellants cannot state a claim based on the same alleged invasion.

■ Moreover, the right of privacy is purely personal. It cannot be asserted by anyone other than the person whose privacy has been invaded. (*Hendrickson v. California Newpapers, Inc.* (1975) 48 Cal.App.3d 59, 62 [121 Cal.Rptr. 429].) Thus, even if Cynthia did have an invasion of privacy claim, David, Maria and Araceli would not have standing. The Coalinga Record did not identify David, Maria and Araceli when it published the Ode. Their invasion of privacy claim is primarily based on their relationship to Cynthia and the community reaction to Cynthia's opinions, not on respondents' conduct directed toward them. (*Miller v. National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1489 [232 Cal.Rptr. 668].)[3]

In sum, because the Ode was not private, appellants' claim is precluded under California privacy tort law.[4] Accordingly, the trial court properly sustained the demurrer to the invasion of privacy cause of action.

2., 3.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[3] David, Maria and Araceli rely on *Vescovo v. New Way Enterprises, Ltd.* (1976) 60 Cal.App.3d 582 [130 Cal.Rptr. 86]. However, this case is distinguishable. In *Vescovo,* the right to sue for invasion of privacy was upheld based on facts showing that the defendants' conduct in publishing a derogatory ad about the teenaged plaintiff's mother that included the plaintiffs' address caused direct and personal physical intrusions on that plaintiff's own solitude in her own home. (*Id.* at p. 588.)

[4] Whether the publication of the Ode infringed on any federal copyright protection the Ode may have had (17 U.S.C. § 101 et seq.) is not before this court and we express no opinion on that issue.

[*] See footnote, *ante,* page 1125.

## DISPOSITION

The portion of the judgment sustaining the demurrer to the intentional infliction of emotional distress cause of action is reversed. In all other respects, the judgment is affirmed. The matter is remanded for further proceedings. The parties shall bear their own costs on appeal.

Ardaiz, P. J., and Gomes, J., concurred.

On April 30, 2009, the opinion was modified to read as printed above.